IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 8, 2012

## IN RE: JENA P.

**Appeal from the Juvenile Court for Rutherford County**
**No. TC 1526     Donna Scott Davenport, Judge**

---

**No. M2011-02605-COA-R3-PT - Filed June 27, 2012**

---

A mother appeals the termination of her parental rights to one child. The trial court found two grounds for termination, abandonment by wanton disregard and persistence of conditions leading to the child's removal from the mother's home. The trial court also found termination was in the child's best interest. The record contains evidence that clearly and convincingly established the ground of persistent conditions and that termination is in the child's best interest; therefore, we affirm the termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Carl R. Moore, Murfreesboro, Tennessee, for the appellant, Virginia P. J.

Robert E. Cooper, Jr., Attorney General and Reporter, and Shanta J. Murray, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

### OPINION

This is a termination of parental rights case initiated by the Department of Children's Services ("DCS") concerning one minor child, Jena. The father, Barry C.[1] ("Father" or "Mr. C.") voluntarily surrendered his parental rights on July 28, 2011. The parental rights of the mother, Virginia P. ("Mother") were terminated pursuant to an Order Terminating Parental Rights and Final Decree of Full Guardianship entered by the Juvenile Court of Rutherford County on October 27, 2011. Although Mother did not appear at any time during the three-

---

[1]This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

day hearing on the petition, she has appealed the trial court's decision to terminate her parental rights. The relevant facts and procedural history are as follows.

On January 6, 2010, Jena was removed from Mother's care by the Department of Children's Services ("DCS"). The removal occurred after Children's Protective Services ("CPS") received a referral alleging a drug-exposed child residing with Mother in the Murfreesboro Motel; when CPS caseworkers investigated, Mother tested positive for drugs. Mother was arrested and remained incarcerated until November 26, 2010. Jena was initially placed with a relative, but on January 8, 2010, the trial court determined the home was inappropriate and Jena was moved to a foster home, where she has resided ever since.

Mother has a history of mental illness and abuse of illegal drugs and prescription medication. While incarcerated, Mother participated in several Child and Family Team Meetings with DCS caseworkers and other service providers to create a permanency plan to assist Mother to become a responsible parent. The plan required Mother to complete treatment for drug addictions, refrain from using illegal drugs, submit to random drug screens, obtain stable housing, participate in and complete parenting classes, obtain a psychological assessment, follow recommendations, refrain from incurring any new criminal charges, cooperate with DCS and law enforcement, and be able to financially support herself and her daughter. The goal of the plan was for Jena to return to Mother. Mother was allowed to write Jena letters, but she was not permitted to have visitation with Jena in jail.

While incarcerated, Mother generally complied with the requirements of the permanency plan. She completed a clinical psychological assessment with a parenting component, as well as an alcohol and drug assessment. She also generally followed the recommendations from each of the assessments.

On September 17, 2010, the trial court entered an Order of Adjudication and Disposition declaring Jena dependent and neglected due to Mother's continued incarceration and residential instability, and because Mother exposed Jena to illegal and nonprescription drugs. A revised parenting plan was ratified September 21, 2010. Because Jena had been in DCS custody for over six months by this time, the new plan added adoption as a goal.

Mother was released from jail on November 26, 2010, and soon thereafter was permitted to have supervised, therapeutic visitation with Jena. There were times when the visits went well. However, Mother also missed several visits, often without providing any notice or providing very short notice. She cited a range of excuses, most frequently her

inability to find transportation. Mother sometimes brought her other child along on the visits[2], and Jena's team members observed that Mother frequently brought up inappropriate topics of conversation and failed to engage Jena. As a result, little if any progress was made toward unsupervised visitation or overnight visitation.

Similarly, while Mother made some effort to participate in treatment for her mental health and addiction problems, her progress was never sustained. In early 2011, Mother failed to appear for two separate "pill counts" – appointments randomly scheduled for DCS caseworkers to determine whether Mother was taking her prescription medication properly. DCS caseworkers requested a medical records release to review Mother's prescription history; however, on at least four different occasions, Mother failed to appear to sign the release, or offered insufficient documentation from her doctor. Mother completed a psychological evaluation, and the psychologist recommended a psychiatric evaluation so that her complete medication regimen could be evaluated. DCS secured the funding for the psychiatric evaluation and provided Mother with all the necessary information so that she could call and make an appointment, but Mother failed to do so. Finally, Mother passed one hair follicle test in early 2011, but when DCS requested and paid for a second test (after a long period without contact from Mother), she failed to appear without notice or explanation.

Mother's housing was also a serious and recurring problem. Immediately following her release from jail, Mother resided with her friend, Ann S. ("Ms. S."), but Mother was informed that Jena could not be returned to Mother at Ms. S.'s residence due to Ms. S.'s criminal record. Mother then lived with her ex-husband, Beavis J. ("Mr. J."), in May 2011. However, throughout the entire process, Mr. J. consistently refused to participate in any team meetings concerning Jena, verify Mother's housing stability, or cooperate with DCS or other service providers in any way. DCS caseworkers were thus unable to determine whether it was appropriate for Jena to live with Mother at Mr. J.'s house.

On April 11, 2011, DCS petitioned the juvenile court to terminate Mother's parental rights to Jena.[3] The grounds cited in the petition were Tennessee Code Annotated § 36-1-113(g)(1) and -113(g)(3), abandonment and persistence of conditions leading to removal. The allegation of abandonment was based on Mother's incarceration and, the petition alleged,

---

[2]The other child, Zach, is not a subject of this action.

[3]The petition also sought to terminate Mr. C.'s rights, as Jena's biological father. However as previously noted, Mr. C. voluntarily surrendered his parental rights on July 28, 2011, and the trial court dismissed the petition against him as moot. The petition also named Mr. J. as a respondent, due to the fact that he and Mother were married at the time of Jena's birth. However, when court-ordered DNA testing identified Mr. C. as Jena's father, the trial court also found Mr. J. was no longer a necessary party and dismissed the petition against him as moot.

because Mother engaged in conduct prior to incarceration exhibiting a wanton disregard for Jena's welfare, as provided by Tennessee Code Annotated § 36-1-102(1)(A)(iv).

After the petition was filed, Mother continued to sporadically participate in visitation, counseling, and some of the other requirements of the parenting plan until July 2011. After a team meeting on July 7, Mother informed DCS that she wished to surrender her parental rights to Jena. Mother then proceeded to cancel two separate scheduled surrender appointments. In August, she left a message for Jena's DCS team leader that she had changed her mind, thus, Jena's team and Mother's attorney convened for a meeting on August 11. However, Mother failed to attend the meeting without providing any notice, and has not communicated with any members of Jena's team or anyone at DCS since the August 2 phone call. She also stopped attending counseling sessions and refused to attend therapeutic visitation with Jena, although DCS had paid for both services to continue at least through September. DCS subsequently learned Mother was arrested for driving on a revoked license 3rd offense on July 15, 2011, and for public intoxication on August 4, 2011.

A hearing on the petition to terminate was held September 1, 2, and 6, 2011. Mother failed to appear at any time, but she was represented by counsel who was present and participated. At the conclusion of the trial, the trial court determined that DCS established both statutory grounds for termination, and that termination of Mother's parental rights was in Jena's best interest, emphasizing Mother's failure to make sustained progress toward responsible parenthood, and the fact that Jena had established a very strong bond with her foster parent of nearly two years who wished to adopt Jena. The Order Terminating Parental Rights and Final Decree of Full Guardianship was entered October 27, 2011.

Mother appeals, contending that the evidence presented at trial is insufficient to support a finding of abandonment by wanton disregard or persistent conditions.

### STANDARD OF REVIEW

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993). This right is superior to the claims of other persons and the government, yet it is not absolute. *In re S.L.A.*, 223 S.W.3d 295, 299 (Tenn. Ct. App. 2006).

Parental rights may be terminated only where a statutorily defined ground exists. Tenn. Code Ann. § 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). The petitioner has the burden of proving that there exists a statutory ground for termination, such as abandonment or failing to remedy persistent conditions that led to the removal of the child. *See* Tenn. Code Ann. §

36-1-113(c)(1); *Jones*, 92 S.W.3d at 838. Only one ground need be proved, so long as that ground is proved by clear and convincing evidence. *See In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). In addition to proving one of the grounds for termination, the petitioner must prove that termination of parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re F.R.R.*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000) (holding a court may terminate a parent's parental rights if it finds by clear and convincing evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child). Therefore, a court may terminate a person's parental rights if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is clearly and convincingly established that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Whether a statutory ground has been proved by the requisite standard of evidence is a question of law to be reviewed *de novo* with no presumption of correctness. *In re Adoption of A.M.H.*, 215 S.W.3d at 810).

**ANALYSIS**

I.

ABANDONMENT BY WANTON DISREGARD

The trial court found that DCS had proven the ground of abandonment by wanton disregard under Tennessee Code Annotated § 36-1-113(g)(1)(iv).[4] DCS elected not to defend this issue on appeal; thus, we shall limit our analysis to the ground of persistent conditions under Tennessee Code Annotated § 36-1-113(g)(3).

---

[4] The definitions for "abandonment of a child" are set forth in Tennessee Code Annotated § 36-1-102(1)(A)(i) through (v). The relevant definition in this case is found in subsection (1)(A)(iv):

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent . . . has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child . . . .

## II.
## PERSISTENT CONDITIONS

Tennessee Code Annotated § 36-1-113(g)(3) specifies the essential elements for the "persistent conditions" ground for termination of parental rights. It provides that grounds for termination exist when:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> > (A)  The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) . . . , still persist;
> >
> > (B)  There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) . . . in the near future; and
> >
> > (C)  The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home; . . .

Tenn. Code Ann. § 36-1-113(g)(3). The failure to remedy the conditions that led to the child's removal need not be willful. *In re Arteria H.*, 326 S.W.3d 167, 177 (Tenn. Ct. App. 2010). Even if not willful, "'a parent's continued inability to provide fundamental care to a child, . . . constitutes a condition which prevents the safe return of the child to the parent's care.'" *Id.* (quoting *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20, (Tenn. Ct. App. Oct. 13, 2008)).

In addition to the requirements set forth in Tennessee Code Annotated § 36-1-113(g)(3), "[t]ermination on the ground of persistence of conditions implicates DCS' obligation to demonstrate that it made reasonable efforts to reunite the child with the parent." *Id.* at 179 (citing *In re C.M.M. & S.D.M.*, No. M2003-0122-COA-R3-PT, 2004 WL 438326, at *7 n.27 (Tenn. Ct. App. March 9, 2004)). DCS must make this showing by clear and convincing evidence. *Id.* (citing *In re R.L.F.*, 278 S.W.3d 305, 316 (Tenn. Ct. App. 2008)).

We find, as the trial court did, that DCS presented clear and convincing evidence of each of these elements. First, Jena was removed from Mother's care on January 6, 2010, and adjudicated dependent and neglected on September 17, 2010; well over six months prior to the filing of the petition to terminate on April 11, 2011. *See* Tenn. Code Ann. § 36-1-

113(g)(3). The undisputed testimony at trial was that Mother made very little sustained progress toward remedying the conditions that led to Jena's removal – namely Mother's substance abuse problems and her inability to maintain a safe, stable residence and lifestyle, refrain from incurring criminal charges, and to provide for Jena's basic needs – and that there was little likelihood these conditions would be remedied in the near future, due to the fact that Mother became increasingly uncooperative over time and refused all services and stopped communicating with DCS after July 7, 2011. Tenn. Code Ann. § 36-1-113(g)(3)(A), (B). Jena's psychologist and her social worker both testified that Jena's experience in Mother's care was traumatic, and that she was very comfortable, happy and thriving in the care of her foster parent, who wished to adopt her. Tenn. Code Ann. § 36-1-113(g)(3)(C).

Finally, DCS made reasonable efforts to remedy these conditions so that Mother and Jena could be reunited. The evidence in the record fully supports the trial court's conclusion that "Mother's actions and her failure to cooperate with [DCS] blocked [DCS] from assisting her any further." Jena's DCS team leader testified that DCS spent over $7,000 on evaluations, classes, and other services for Mother. In addition to the counseling and therapeutic visitation services provided, DCS arranged funding for a psychiatric evaluation to deal with Mother's prescription drug problem and Mother simply failed to call and make the appointment. Furthermore, on several occasions DCS attempted to get Mother to sign a medical release form so that caseworkers could determine whether Mother's doctors were aware of her condition, but Mother never properly completed the form. As for the problem of Mother's housing instability, the record reflects that when Mother moved back in with Mr. J., DCS attempted to work with him to determine if the home was appropriate for Jena, but he refused to cooperate and Mother then simply stopped communicating with DCS altogether. There are numerous additional examples in the record of efforts by DCS caseworkers and other members of Jena's team to determine what services Mother needs and to provide those services around Mother's schedule, but most of these efforts ultimately proved ineffective due to Mother's refusal or inability to cooperate.

We have affirmed the trial court's finding of one ground for termination of Mother's parental rights. If at least one statutory ground for termination is proven by clear and convincing evidence, a parent's rights may be terminated if it is also determined that termination is in the best interest of the child. *See In re D.L.B.*, 118 S.W.3d at 367. Therefore, we shall determine whether termination of Mother's parental rights is in Jena's best interest.

III.
BEST INTEREST OF THE CHILD

The Tennessee General Assembly has provided a list of factors for the court to consider when conducting a best interest of the child analysis. *See* Tenn. Code Ann. § 36-1-

113(i)(1)-(9). The nine statutory factors, which are well known and need not be repeated here, are not exclusive or exhaustive, and other factors may be considered by the court. *See In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Moreover, not every statutory factor need apply; a finding of but a few significant factors may be sufficient to justify a finding that termination of the parent-child relationship is in the child's best interest. *See In re M.A.R.*, 183 S.W.3d at 667. The child's best interest is to be determined from the perspective of the child rather than the parent. *See State Dep't of Children's Servs. v. L.H.*, No. M2007-00170-COA-R3-PT, 2007 WL 2471500, at *7 (Tenn. Ct. App. Dec. 3, 2007) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

For the reasons discussed above, we find that Mother failed to make an adjustment in her circumstances, conduct, or conditions to make it safe or in Jena's best interest to be returned to Mother's care, *see* Tenn. Code Ann. § 36-1-113(i)(1), and that a change of caretakers is likely to have a detrimental and damaging effect on Jena's emotional, physical and mental condition. Tenn. Code Ann. § 36-1-113(i)(5). Moreover, Mother's contact with Jena has been inconsistent since Jena's removal, and the undisputed proof at trial was that Mother has not visited Jena since July 2011. Tenn. Code Ann. § 36-1-113(i)(3). Considering these factors from Jena's perspective, rather than Mother's, we find clear and convincing evidence that it is in Jena's best interest that Mother's parental rights be terminated.

## IN CONCLUSION

The record contains evidence that clearly and convincingly established the ground of persistent conditions under Tenn. Code Ann. § 36-1-113(g)(3), and that termination is in the best interest of the child in this case. Tenn. Code Ann. § 36-1-113(i). Therefore, we affirm the termination of Mother's parental rights to Jena P. This matter is remanded with costs of appeal assessed against the Department of Children's Services due to Mother's indigence.

_____
FRANK G. CLEMENT, JR., JUDGE